# United States District Court

Eastern District of California



JAN 3 0 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

UNITED STATES OF AMERICA
V.
Edward Preston STOUT

## CRIMINAL COMPLAINT

CASE NUMBER: 1: 0 9 MJ 0 0 0 2 2 DLB

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Between the dates of on or about December 23, 2008, through on or about January 28, 2009, in the County of Fresno, State and Eastern District of California, the defendant did,

use the mail or any facility or means of interstate or foreign commerce of the United States to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, and

travel in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person;

in violation of Title 18, United States Code, Sections 2422(b) and 2423(b). I further state that I am a Special Agent with the U.S Department of Homeland Security-ICE, and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT OF SENIOR SPECIAL AGENT MIKE PRADO

X Continued on the attached sheet and made a part hereof.

Signature of Complainant
**Senior Special Agent Mike Prado**
U.S. Immigration and Customs Enforcement

Sworn to before me and subscribed in my presence

| January 30, 2009 | at | Fresno, California |
| --- | --- | --- |
| (Date) | | (City and State) |

_____
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Re: In Support of
Criminal Complaint

Edward Preston STOUT
Richmond Heights, Missouri 63117

### AFFIDAVIT

I, Mike Prado, being duly sworn, hereby depose and state as follows:

1. I am a Senior Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), presently assigned to the Office of the Resident Agent in Charge, Fresno, California (RAC/Fresno). I have been employed as an ICE Special Agent for over six and a half years. As part of my daily duties as an ICE special agent, I investigate criminal violations relating to child sexual exploitation, including violations pertaining to the enticement or coercion of a person under the age of eighteen to engage in unlawful sexual activity via the Internet, in violation of 18 U.S.C. §§ 2422(b), and the interstate or foreign travel by an individual for the purposes of engaging in an illicit sexual act with a child, in violation of U.S.C. §§ 2423(b). I have received training and have investigative experience in the area of online child sexual exploitation, including the investigation of the aforementioned statutes, previously resulting in the

1

apprehension and prosecution of subjects who have violated the aforementioned statutes. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the United States Customs Service Basic Enforcement School. As part of my duties as an ICE Special Agent I have also been detailed to the ICE Cyber Crimes Center (C3) in Fairfax, Virginia to instruct other agents in the interview and interrogation of child sexual predators. In March 2005 and July 2006 I attended advanced training courses related to the investigation of child pornography and other forms of child sexual exploitation, conducted by the United States Department of Justice at the National Advocacy Center in Columbia, South Carolina. In September 2005 I attended advanced training related to the investigation of online child sexual exploitation at the ICE Cyber Crimes Center in Fairfax, Virginia. In December 2005 I attended training at the National Center for Missing & Exploited Children related to the investigation of Internet child pornography. In May 2006, I was awarded a national award by the United States Attorney General and the National Center for Missing & Exploited Children for investigations I have conducted related to child pornography and child sexual exploitation. During the course of my duties I have been the investigating officer and Affiant of approximately eighty applications for Criminal Complaint relating to numerous federal child pornography and/or child sexual exploitation investigations. I am a magna cum laude graduate from Sonoma State University with a Bachelor's Degree in History. Prior to becoming an ICE Special Agent, I was employed as a Supervising Investigator with the Tulare County (California) District Attorney's Office.

2.    This affidavit is made in support of a criminal complaint for Edward Preston STOUT of Richmond Heights, Missouri for violating the following federal statutes:

a.    18 U.S.C. § 2422(b), which makes it a crime for any person to use the mail or any facility or means of interstate or foreign commerce of the United States to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, and

b. 18 U.S.C. § 2423(b), which makes it a crime for any person to travel in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person.

3. The information contained in this affidavit is based upon my personal observations and training and, where noted, information related to me by other law enforcement officers and/or agents.

4.    On January 28, 2008, the Fresno Internet Crimes Against Children (ICAC) Task Force, whom your Affiant is a participating member of, received a telephone call from the City of Sanger Police Department, which has been designated as an ICAC affiliate agency.  According to Sanger Police Department (SPD) Officer Jason Boust, a child sexual exploitation investigation had been initiated of subject Edward Preston STOUT, a 27 year old resident of Richmond Heights, Missouri.  The investigation was initiated upon receipt of information from the father of a fifteen year old female (herein referred to in this Affidavit as a CONFIDENTIAL VICTIM or CV).  According to the father, his daughter had been engaged in a telephonic "relationship" with

STOUT, who he knew to be a 27 year old man, for approximately one year against his wishes and repeated attempts to prohibit the relationship. The father informed Sanger Police that while he strongly disapproved of the relationship and repeatedly attempted to have his daughter terminate the relationship his daughter and STOUT continued to contact one another telephonically and electronically. CV's father stated he had personally spoken to STOUT on previous and repeated occasions via telephone and told him to stop calling his daughter because she was only fifteen years of age (and prior to December 2008, was only fourteen years of age). The father informed police that while he disapproved of the contact between CV and STOUT he was not overly concerned because he was aware that STOUT resided in Missouri and therefore did not consider STOUT a threat to the physical safety of his daughter. The father then informed SPD Officer Boust that at approximately 0200 hours on January 27, 2008, he awoke and found that his daughter was not in her bed. The father stated that he subsequently located CV outside of the residence hugging an individual later identified as STOUT outside of his vehicle that had a State of Missouri license plate. A verbal confrontation between CV's father and STOUT ensued, resulting in STOUT leaving the area in his vehicle. According to CV's father, he believed STOUT again contacted CV on January 28, 2008. CV's father stated he was informed by CV'S school that a male had called the school stating he was CV'S father and that CV would be absent from school that day. Believing that STOUT had made potentially harmful contact with his daughter, CV's father contacted Sanger Police.

5. On January 28, 2008, Sanger Police contacted STOUT via his cell phone number that had previously been obtained from CV

4

by her father. After initially attempting to deceive officers by stating he was on his way back to Missouri, STOUT subsequently informed officers he was staying at the Townhouse Motel in Sanger. STOUT was contacted by SPD officers at the motel and subsequently agreed to accompany officers to the Sanger Police Department for questioning. STOUT was not placed under arrest and was not restrained by handcuffs or any other method. STOUT voluntarily traveled to the Sanger Police Department where he agreed to stay while Officer Boust typed his report of the incident (Sanger Police report number 09-385). During this time Officer Boust contacted ICAC personnel for further investigative assistance.

6. At approximately 1500 hours, your Affiant and fellow ICAC members John Kuzma, who is an ICE Senior Special Agent, and Detectives Kevin Wiens and Julie Williams of the Fresno County Sheriff's Department, responded to the Sanger Police Department. After being apprised of the events leading up to STOUT'S arrival in Sanger and the Sanger Police Department, your Affiant and Senior Special Agent (SSA) John Kuzma, contacted STOUT in an interview room at the Sanger Police Department. Your Affiant identified himself and SSA Kuzma as federal agents who would like to question him about the events that led him to Sanger. Your Affiant informed STOUT that although he was not under arrest he would nonetheless be provided his rights, per Miranda. After being advised of his Miranda rights STOUT agreed, both verbally and in writing to waive his rights and speak to agents. The interview was tape recorded and videotaped.

7. During the interview STOUT verified that he was a 27 year old resident of Richmond Heights, MO, which is a suburb of

5

St. Louis. STOUT stated he is presently employed in Missouri as a card dealer in a riverboat casino. STOUT stated that he drove thirty hours straight to Sanger in his own vehicle, a gold Ford Explorer, for the purposes of meeting CV, whom he knew to be a fifteen year old female juvenile. STOUT stated that he first encountered CV through her brother, whom he met over the Internet while playing the gaming console X-Box Live. STOUT stated that in approximately March 2008, while CV was fourteen years of age, they began engaging each other in online, and subsequently telephonic, communication. STOUT stated the communication occurred via telephone conversations, X Box online conversations and via the online social networking Web site MySpace.com. STOUT also stated that he and CV would text message each other via cellular telephone. STOUT stated that initially they had a platonic relationship but that the relationship subsequently became more "boyfriend and girlfriend." When further questioned STOUT explained that they both began to have intimate feelings for one another. Upon further questioning STOUT stated that in December 2008 he purchased and mailed a Nokia cellular telephone to CV so that they could speak more frequently and privately to one another. During questioning STOUT subsequently admitted that he engaged in "phone sex" with CV, while knowing she was a juvenile. STOUT stated that both he and CV would masturbate over the phone while discussing in a sexually explicit manner the type of activity they wished to engage in with one another. STOUT subsequently further admitted to sending images of his erect penis to CV via the camera function on his cellular telephone and also admitted receiving images of CV's exposed vagina via the camera function on the cellular telephone he had provided to her, to which he admitted masturbating to. During the interview STOUT informed

agents that he had taken the images of CV'S vagina, which he estimated numbered around 20 separate images, as well as images of her bare breasts, and transferred them to a memory card that was presently located at his residence in Missouri.

8.   During the interview STOUT verified that the reason he traveled to Sanger, California from Missouri was to meet CV in person so that he could "hold her." During questioning regarding his trip STOUT initially denied engaging in any sexual activity with CV, citing CV'S status as a juvenile as the reason he would not engage in such activity with her. Throughout the interview STOUT denied engaging in sexual intercourse with CV. STOUT initially admitted that he had "made out" with CV upon making contact with her, and later admitted to touching her buttocks, but denied engaging in any additional sexual activity. Upon further questioning, STOUT then admitted to kissing the top of CV'S breasts and later admitted to fondling her breasts as well while she had her bra on and was clothed. After repeated denials, STOUT then admitted to your Affiant and SSA Kuzma that earlier that morning he and CV met in his hotel room after he had called the school posing as CV'S father in an effort to excuse her absence. STOUT stated that while in the hotel room he received oral sex from CV and further admitted ejaculating into her mouth. STOUT also admitted to agents that he first met CV in person outside of her residence upon arriving in Sanger late in the evening of January 26, 2008, and that upon making contact he and CV kissed one another and she rubbed his erect penis through his pants with her hand.

9.   During the interview STOUT stated he was aware it was "wrong" to engage in the aforementioned activity with CV because

7

of her status as a juvenile.  Throughout the interview STOUT repeatedly expressed feelings of affection for CV and indicated that located on his Myspace account, which he provided to agents, was located a countdown clock marking the amount of time remaining until CV turned 18 years of age.  STOUT acknowledged that the significance of CV turning 18 had to do with the relationship transitioning from illicit to legally permissible.  In addition to providing agents consent to access both his Myspace page and email account, STOUT provided written consent for agents to search his cellular telephone, his vehicle, the motel room he rented in Sanger and his residence in Richmond Heights, MO.

    10.  A search of the subject's cellular telephone, conducted by Fresno County Sheriff's Detective Kevin Wiens, who is a trained computer forensic examiner, has thus far revealed numerous sexually explicit text messages between STOUT and CV to the cell phone he had previously provided to her.  Among the messages from STOUT are messages to CV regarding his intent to travel to Sanger to meet CV and arrangements on where to meet once he arrives, as well as multiple messages stating that he loves CV.  In addition, sexually explicit text messages from STOUT to CV have been recovered, including a message sent by STOUT to CV on January 23, 2009, prior to his travel to Sanger stating his desire to "fuck (CV) doggystyle," as well as his desire to engage in mutual and simultaneous oral sex with CV, and his desire to ejaculate "down (CV's) throat."

    11.  In addition to the search of the phone, a consensual search of STOUT'S vehicle and hotel room conducted by your Affiant and SSA John Kuzma on the evening of January 28, 2008,

8

resulted in the seizure from STOUT'S hotel room of a bag containing stuffed animals, candy, artificial roses and a greeting card addressed to CV from STOUT in which he professes his love to her and signs the card "Your husband." STOUT later admitted to your Affiant that he and CV jokingly refer to each other as husband and wife. Also seized from the room was STOUT'S X-Box gaming console and indicia documenting STOUT'S travel from Missouri to Sanger, California. Located in the hotel room was STOUT'S dog, which he brought with him on the trip. The dog has since been transferred to the custody of Sanger Animal Control and STOUT'S vehicle, registered in Missouri, has been towed and impounded. Also seized from STOUT were multiple Mapquest pages detailing driving directions from Richmond Heights, MO, to Sanger, CA.

12. In furtherance of this investigation, and pursuant to written consent previously obtained from STOUT, ICE special agents assigned to St. Louis, MO were contacted the evening on January 28, 2008, and requested to conduct a search of STOUT'S apartment in Richmond Heights, MO, located adjacent to St. Louis. The search was subsequently conducted and resulted in the seizure of indicia containing CV'S address and other identifying information. The search did not yield the memory card mentioned by STOUT and referenced in paragraph number 7 of this Affidavit. The items seized from STOUT'S residence are presently in the process of being shipped to the ICE/Fresno Office of Investigations in furtherance of this investigation.

13. While your Affiant and SSA Kuzma interviewed STOUT and conducted a search of his motel room and vehicle, Fresno County Sheriff's Detectives Kevin Wiens and Julie Williams made contact

9

with CV at her residence in Sanger. During an interview with Detective Williams, CV stated that in approximately April 2008, she met STOUT through her brother, who played online X-Box games with the suspect. CV stated that she and STOUT developed an online platonic relationship and talked via X-Box Live. CV stated that in approximately September 2008 she informed STOUT that she had developed romantic feelings for him. According to CV, STOUT initially told her they could not have a relationship because it would be "wrong" and their age difference was too substantial. CV stated that STOUT ultimately developed reciprocal romantic feelings for her and that they became "boyfriend and girlfriend" in September 2008. According to CV, their conversations became sexually explicit in October and November 2008 and first started off as jokes between one another but ultimately became serious sexually explicit conversations. CV stated that for her fifteenth birthday in December 2008, STOUT shipped her a Nokia cell phone, along with t-shirts, a necklace and a CD. CV stated that the purpose of STOUT sending the phone was so that they could have private conversations and text message each other. CV stated that she subsequently used the camera function of the cell phone to take at least four separate images of her vagina, which she then sent to STOUT via the cell phone. CV told Detective Williams that she could not recall whether it was her idea or STOUT'S to take the pictures. CV stated that on previous occasions she had informed STOUT of her desire to meet him in person but was surprised when on January 25, 2009, she received a call from STOUT informing her that he was on his way to Sanger. CV stated that upon his arrival in Sanger on the evening of January 26, 2008, she met STOUT down the street from her residence, where they proceeded to kiss, give each other "hickies" and touch one another over

their clothes. CV stated that eventually her father caught them and STOUT left. CV stated that on the morning of January 28, 2008, she met STOUT at his motel room in Sanger, where STOUT called the school and pretended to be her father in an attempt to excuse her absence from class. CV stated that while at the motel that morning she proceeded to perform oral sex on STOUT.

14. During Detective Williams' interview of CV, Detective Wiens conducted a consensual search of CV'S Nokia cellular telephone that STOUT had given to her. According to Detective Wiens, located on the phone were approximately over 1000 text messages, primarily between STOUT and CV. Among the messages sent by from a phone number identified during this investigation as belonging to STOUT were messages in which he stated he wished to "fuck (CV) silly," and that he loved her. In addition, Detective Wiens has located at least one image of what appears to be CV'S vagina on the phone and which is presently believed, based on this investigation, to be one of the images she previously sent to STOUT.

15. At the conclusion of the evening, and based on the facts described in this Affidavit, STOUT was placed under arrest by Sanger Police for violation of California Penal Code Sections 288(c)(1), Lewd or Lascivious Acts with a Child Fourteen or Fifteen Years of Age, 288.2(b), Sending Harmful Matter to a Minor, and 288a(b)(2), Lewd and Lascivious or Acts with a Child Under Sixteen Years of Age. STOUT was subsequently transported to the Fresno County Jail by your Affiant and booked into state custody for violation of the aforementioned California Penal Code statues.

16. Based on the investigative findings thus far, including STOUT'S statement to agents, CV's statement to detectives, and physical evidence recovered from both CV and STOUT'S cellular telephones, as well as physical evidence seized from STOUT, it is evident that he is in violation of Title 18 USC 2422(b), which makes it a crime for any person to use the mail or any facility or means of interstate or foreign commerce of the United States to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, and also evident that STOUT is in violation of Title 18 USC 2423(b), which makes it a crime for any person to travel in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person.

17. Because this affidavit is written solely for the purpose of establishing probable cause for issuance of a criminal complaint, not all results of this investigation have been included herein.

Wherefore, based upon the above facts and information, I submit there is probable cause to believe that defendant, Edward Preston STOUT, has violated 18 U.S.C. 2422(b), which makes it a crime for any person to use the mail or any facility or means of interstate or foreign commerce of the United States to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, and 18 U.S.C. 2423(b), which makes it a crime for any person to travel in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Mike Prado, Senior Special Agent
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Sworn to before me, and subscribed in my presence, This 30 day of January 2009

_____
United States Magistrate Judge